FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

# UNITED STATES DISTRICT COURT

Nov 21, 2018

SEAN F. McAVOY, CLERK

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DALE L.,<br><br>                Plaintiff,<br><br>   vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                Defendant. | No. 1:17-cv-03186-MKD<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's Motion, ECF No. 15, and denies Defendant's Motion, ECF No. 16.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

ORDER - 3

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

ORDER - 5

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On April 24, 2013, Plaintiff protectively filed applications for Title II disability insurance benefits and for Title SVI supplemental security income benefits, alleging a disability onset date of March 11, 2013. Tr. 288-301. The applications were denied initially, Tr. 161-64, and on reconsideration, Tr. 168-74. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on March 10, 2015. Tr. 30-57. On March 27, 2015, the ALJ denied Plaintiff's claim. Tr. 140-55. Plaintiff appealed that decision, and the Appeals Council remanded the case for further proceedings. Tr. 156-60. Plaintiff appeared at a second hearing

before the ALJ on June 7, 2016. Tr. 58-95. On February 1, 2017, the ALJ denied Plaintiff's claim. Tr. 15-23.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 11, 2013. Tr. 17. At step two, the ALJ found Plaintiff had the following severe impairments: diabetes mellitus, degenerative disc disease of the lumbar spine, left shoulder disorder, and essential hypertension. *Id.* At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. Tr. 18. The ALJ then concluded that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] can stand and/or walk for two hour intervals for eight hours per day with normal breaks. [Plaintiff] can sit for two hour intervals for eight hours per day with normal breaks. [Plaintiff] can have no over the shoulder reaching with the left, non-dominant upper extremity. [Plaintiff] cannot climb ladders, ropes, scaffolds. [Plaintiff] can occasionally climb stairs and ramps, occasionally crawl. [Plaintiff] can frequently balance, stoop, kneel, and crouch. [Plaintiff] can have occasional exposure to hazards or vibrations.

Tr. 18.

At step four, the ALJ found Plaintiff was capable of performing past relevant work as a security guard. Tr. 22. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from March 11, 2013, through February 1, 2017, the date of the ALJ's decision. Tr. 22-23.

ORDER - 7

On August 25, 2017, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability income benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 15. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom claims;

2. Whether the ALJ properly weighed the medical opinion evidence; and

3. Whether the properly determined Plaintiff was capable of performing past relevant work at step four.

ECF No. 15 at 1.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims. ECF No. 15 at 17-20. An ALJ engages in a two-step analysis to determine whether to discount a claimant's

ORDER - 8

testimony regarding subjective symptoms.[1]  SSR 16–3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [his] impairment could reasonably be

expected to cause the severity of the symptom [he] has alleged; [he] need only

show that it could reasonably have caused some degree of the symptom."  *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

_____

[1] At the time of the ALJ's decision in February 2017, the regulation that governed

the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p

effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms

in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).  The ALJ's

decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded

effective June 14, 2018, in favor of the more comprehensive SSR 16-3p.  Neither

party argued any error in this regard.

ORDER - 9

omitted).  General findings are insufficient; rather, the ALJ must identify what

symptom claims are being discounted and what evidence undermines these claims.

*Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently

explain why it discounted claimant's symptom claims).  "The clear and convincing

[evidence] standard is the most demanding required in Social Security cases."

*Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r*

*of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting

effects of an individual's symptoms include: 1) daily activities; 2) the location,

duration, frequency, and intensity of pain or other symptoms; 3) factors that

precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

side effects of any medication an individual takes or has taken to alleviate pain or

other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment

an individual uses or has used to relieve pain or other symptoms; and 7) any other

factors concerning an individual's functional limitations and restrictions due to

pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

404.1529(c), 416.929(c) (2011).  The ALJ is instructed to "consider all of the

evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms was not entirely consistent with the evidence. Tr. 19.

### 1. Lack of Supporting Evidence

The ALJ found Plaintiff's symptom complaints were not supported by evidence in the record. Tr. 19-20. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2) (2011). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff testified that his shoulder was in continuous pain. Tr. 53, 89. However, the ALJ found that the medical evidence did not document such severe

shoulder impairment.  Tr. 19-20; *see* Tr. 522 (Plaintiff presented for evaluation of shoulder pain on July 2, 2009 and "refuse[d] to consider any shoulder surgery at all"); Tr. 561 (June 26, 2013 examination showed normal range of motion in upper extremities and x-ray of shoulder was unremarkable); Tr. 692 (October 27, 2015 examination tenderness and limitation in range of motion in shoulder, but motor strength normal); Tr. 754 (X-ray of shoulder reviewed on November 24, 2015 showed mild degenerative changes); Tr. 757 (MRI reviewed on January 12, 2016 showed evidence of partial rotator cuff tear but no evidence of osteochondroma; treatment provider recommended physical therapy and Plaintiff deferred); Tr. 684 (January 27, 2016: normal musculoskeletal examination); Tr. 617-18 (January 28, 2016: full, normal range of motion and full strength in upper extremities); Tr. 672 (February 23, 2016: normal musculoskeletal examination).

Plaintiff also testified to constant tailbone pain.  Tr. 55.  However, the ALJ noted that Plaintiff's treatment notes did not regularly document Plaintiff's complaints of back pain.  Tr. 20; *see* Tr. 691 (October 27, 2015: no complaint of back pain); Tr. 683 (January 27, 2018: same); Tr. 617 (January 28, 2016: same); Tr. 671 (February 23, 2016: same).  The ALJ relied on this evidence to conclude that the record did not document the level of impairment Plaintiff alleged.  Tr. 19-20.

Plaintiff offers evidence to indicate Plaintiff's shoulder impairment was severe. ECF No. 15 at 19; *see* Tr. 609, 689-92 (Plaintiff requested orthopedic surgery on October 27, 2015; examination showed tenderness and limited range of motion); Tr. 754 (Plaintiff underwent steroid injection for shoulder pain on November 24, 2015); Tr. 737 (January 29, 2016: ulcerative lesions attributed to chronic nonsteroidal anti-inflammatory drug use for shoulder pain). Plaintiff also asserts that evidence of symptom free periods of back pain do not undermine Plaintiff's symptom testimony; however, Plaintiff fails to identify evidence in the record that does support Plaintiff's allegations of back pain. ECF No. 15 at 20. Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Based on this record, the ALJ reasonably concluded that the medical evidence did not document Plaintiff's symptoms at the severity Plaintiff alleged. Tr. 19-20. This finding is supported by substantial evidence.

### 2. *Daily Activities*

The ALJ found Plaintiff's symptom testimony was inconsistent with Plaintiff's activities. Tr. 20. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to

ORDER - 13

a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Plaintiff testified that he is unable to walk for more than two blocks at a time and that he has to lie down up to twice a day for one and a half to two hours at a time. Tr. 90-91. However, the ALJ observed that the record indicated Plaintiff spent a substantial amount of his time fishing on the river. Tr. 20; *see* Tr. 597 (Plaintiff "spending most of his time fishing on the river"); Tr. 703 (Plaintiff's medication compliance was worse "since spending most of his time down at the river." Plaintiff's blood sugars improved "mainly due to increased activity, [Plaintiff] says he is doing most of the work fishing."); Tr. 708 (Plaintiff reported skipping morning insulin dose when on the water because he did not want to crash while on the water). The ALJ reasonably concluded that Plaintiff's fishing activity

indicated Plaintiff was more active than he alleged.  Tr. 20.  This finding is supported by substantial evidence.

### 3. Inconsistencies about Stopping Work

The ALJ found Plaintiff's symptom testimony was inconsistent with Plaintiff's reason for stopping work, which the ALJ also found to be inconsistently reported.  Tr. 20-21.  An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination.  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).  Furthermore, an ALJ may consider the consistency of an individual's own statements made in connection with the disability review process with any other existing statements or conduct made under other circumstances.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ discussed Plaintiff's testimony regarding the reasons he stopped working at the 2015 and 2016 hearings.  Tr. 20.  The ALJ initially stated that Plaintiff's "recent testimony about why he quit working is consistent with his prior testimony," Tr. 20, then the ALJ stated that there was a discrepancy between Plaintiff's 2015 and 2016 testimony, Tr. 21.

At the 2015 hearing, Plaintiff testified that it was an "involuntary term", Tr. 41, he had a disagreement with his boss, he was let go from his job because he

ORDER - 15

refused to take anger management classes and that, given the opportunity, he would not have returned to his prior job because he lacked sufficient computer skills to do the job and because he did not get along with his coworkers. Tr. 41-46. During the 2016 hearing, Plaintiff again testified that it was an "involuntary term", Tr. 86, he had a disagreement with his boss, and he stopped working because he refused to take anger management classes and because he experienced physical fatigue. Tr. 86-87. Based on the Court's review of the record, the testimony appears to be relatively consistent. Given the lack of clarity in the ALJ's finding regarding what testimony he found consistent and inconsistent, the Court concludes that this reason is not supported by substantial evidence and is not a sufficient basis, as articulated, to find Plaintiff's symptom claims not credible.

### 4. Positive Response to Treatment

The ALJ noted that Plaintiff's hypertension was controlled with medication. Tr. 20. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of

ORDER - 16

debitating pain or other severe limitations). Here, the ALJ noted Plaintiff's

hypertension was documented as under control throughout the record, even when

Plaintiff was not fully compliant with medications. Tr. 20; *see* Tr. 715 (blood

pressure at goal on April 2, 2015); Tr. 709 (blood pressure controlled on June 4,

2015); Tr. 703 (blood pressure controlled on July 2, 2015 despite not taking

medication in the previous four days); Tr. 696 (blood pressure controlled on

October 27, 2015 even though medication compliance is 50%); Tr. 687 (blood

pressure controlled on January 12, 2016 despite not taking medication for past six

days); Tr. 667 (blood pressure at goal on April 5, 2016). The ALJ also noted that

the record did not indicate Plaintiff developed any cardiac problems as a result of

his hypertension. The record supports the conclusion that Plaintiff's hypertension

is controlled with medication. However, Plaintiff did not testify to any functional

limitations caused by hypertension nor is this impairment (hypertension) a primary

basis for Plaintiff's claim of disability. Tr. 32-56, 62-92. The ALJ did not explain

how the fact that Plaintiff's hypertension was controlled with medication

undermined Plaintiff's symptom testimony as to the other impairments, which

form the basis of Plaintiff's basis for seeking disability. Tr. 20; *Ghanim*, 763 F.3d

at 1163 (requiring the ALJ to sufficiently explain why it discounted claimant's

symptom claims). Without more explanation of how this evidence undermined

Plaintiff's symptom reporting, this was not a clear and convincing reason to discredit Plaintiff's testimony.

### 5. *Noncompliance with Treatment Recommendations*

The ALJ found Plaintiff's symptom reporting was undermined by his noncompliance with treatment recommendations. Tr. 19. It is well-established that unexplained or inadequately explained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113-14; *Tommasetti*, 533 F.3d at 1039; *see also Smolen*, 80 F.3d at 1284 (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility). Here, the ALJ noted that Plaintiff demonstrated a history of noncompliance with diabetic treatment during the relevant period. Tr. 19, 149; *see* Tr. 531 (April 29, 2013: Plaintiff reported not taking insulin); Tr. 578 (January 18, 2014: Plaintiff reported he was erratic with insulin); Tr. 597 (July 31, 2014: Plaintiff was not compliant with medication and reported his last dose was 10 days ago); Tr. 595 (December 9, 2014: Plaintiff reported his insulin compliance was less than 10%); Tr. 715 (April 2, 2015: Plaintiff's medication compliance was less than 50% and Plaintiff was not willing to change his habits); Tr. 708-09 (June 4, 2015: Plaintiff still had poor medication compliance. He reported skipping morning doses so as to not crash while on the water and skipping evening doses because he was too tired); Tr. 703 (July 2, 2015:

ORDER - 18

Plaintiff continued history of noncompliance); Tr. 696 (October 27, 2015: Plaintiff reported compliance at about 50%); Tr. 687 (January 12, 2016: Provider noted it was hard to make changes to Plaintiff's medication because of Plaintiff's history of noncompliance); Tr. 667 (April 5, 2016: Plaintiff reported he was injecting insulin daily but only checked his blood sugar 12 times). The ALJ relied on this evidence to conclude that Plaintiff's diabetes and complications were not as severe as alleged, otherwise Plaintiff would take greater care of himself. Tr. 19.

Although the record does document a history of noncompliance with prescribed medication, the evidence also indicates that other factors, such as finances, contributed to Plaintiff's noncompliance. *See* Tr. 531-32 (April 29, 2013: Plaintiff reported not taking insulin and that he lost his insurance); *see also* Tr. 55 (Plaintiff testified that he was not engaged in physical therapy because he did not have insurance). The ALJ is required to consider Plaintiff's reasons for noncompliance. Here, the ALJ's discussion of Plaintiff's noncompliance did not consider whether Plaintiff's noncompliance was sufficiently explained. Tr. 19; *see Molina*, 674 F.3d at 1113-14. Because this case is remanded for the ALJ to reconsider the medical opinion evidence, as discussed *infra*, the ALJ is instructed to also reconsider Plaintiff's symptom testimony on remand. On remand, the ALJ should address Plaintiff's proffered reasons for his noncompliance with treatment.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinions of Rex Quaempts, M.D., William Drenguis, M.D., and Rox Burkett, M.D. ECF No. 15 at 10-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

### 1. Dr. Quaempts

Dr. Quaempts, Plaintiff's treating provider, opined on July 11, 2014[2] that working on a regular and continuous basis would cause Plaintiff's condition to deteriorate, that Plaintiff would miss two to three days of work per month due to his medical impairments, and that Plaintiff was limited to sedentary work. Tr. 569.

_____

[2] Although Dr. Quaempts' opinion is dated July 11, 2015, Dr. Quaempts' treatment note from July 11, 2014 indicates that Dr. Quaempts filled out SSI paperwork for Plaintiff on that date. Tr. 571-72. Additionally, Dr. Quaempts' opinion existed in the record as Exhibit 9F at the time of the first administrative hearing on March 10, 2015. Tr. 32. Therefore, Dr. Quaempts' opinion could not have been rendered on July 11, 2015.

ORDER - 21

The ALJ gave this opinion little weight. Tr. 150.[3] Because Dr. Quaempts' opinion was contradicted by Dr. Thuline, Tr. 103-05, and Dr. Staley, Tr. 125-27, the ALJ was required to provide specific and legitimate reasons for discrediting this opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Quaempts' opinion was inconsistent with his treatment notes. Tr. 150. Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion. *Tommasetti*, 533 F.3d at 1041. The ALJ found that Dr. Quaempts' opinion was inconsistent with his July 2014 treatment notes, in which Plaintiff reported that he was doing well. Tr. 150; *see* Tr. 571. However, this single observation from one treatment note does not provide substantial evidence to undermine Dr. Quaempts' opinion in light of the significant quantity of Dr. Quaempts' treatment notes in the record documenting Plaintiff's symptoms. *See* Tr. 405-28, 460-522, 529-52, 571-85, 586-605. Indeed, Dr. Quaempts' treatment notes document significant symptoms over the course of the treatment relationship.

_____

[3] The ALJ's 2017 opinion noted that the Appeals Council did not disturb the ALJ's 2015 findings regarding Dr. Quaempts' opinion and therefore incorporated the ALJ's 2015 findings regarding Dr. Quaempts' opinion into the 2017 opinion. Tr. 21 n.1.

ORDER - 22

*See, e.g.,* Tr. 531, 548, 578, 584, 597. The ALJ's conclusion that Dr. Quaempts' opinion was inconsistent with his treatment notes is not supported by substantial evidence.

Second, the ALJ found Dr. Quaempts' opinion was inconsistent with Plaintiff's reported fishing activity. Tr. 150. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ALJ noted that Plaintiff reported spending most of his time fishing. Tr. 150; *see* Tr. 597 (Plaintiff "spending most of his time fishing on the river"); Tr. 703 (Plaintiff's medication compliance was worse "since spending most of his time down at the river." Plaintiff's blood sugars improved "mainly due to increased activity, [Plaintiff] says he is doing most of the work fishing."); Tr. 708 (Plaintiff reported skipping morning insulin dose when on the water because he did not want to crash while on the water). The ALJ reasonably concluded that Plaintiff's fishing activity, particularly the amount of time spent engaged in that activity, was inconsistent with the level of impairment Dr. Quaempts opined. Tr. 150.

Third, the ALJ found Dr. Quaempts' opinion omitted mention of Plaintiff's medication noncompliance, casting doubt on the overall reliability of Dr. Quaempts' opinion. Tr. 150. The ALJ did not identify relevant legal authority for the assertion that Dr. Quaempts' failure to note Plaintiff's medication

noncompliance in his report is a specific and legitimate reason to discredit his opinion, and the Commissioner does not do so now.  Tr. 150; ECF No. 16 at 13. Although the Commissioner cites to *Chaudhry v. Astrue* as authority for the ALJ's finding, the Court finds it inapplicable to this case.  In *Chaudhry*, the Court upheld the ALJ's rejection of an examining source's opinion because the opinion was based in part on an erroneous belief that the claimant's wheelchair and cane usage were prescribed by a medical source.  688 F.3d 661, 671 (9th Cir. 2012).  Here, Dr. Quaempts did not appear to hold any erroneous belief regarding Plaintiff's medication noncompliance.  In fact, Plaintiff's noncompliance is documented consistently throughout Dr. Quaempts' treatment notes.  *See, e.g.*, Tr. 531, 548, 578, 584, 597.  The fact that Dr. Quaempts did not document Plaintiff's medication noncompliance on the form on which he rendered his opinion does not provide specific and legitimate reason to discredit Dr. Quaempts' opinion.

Overall, the ALJ did not provide sufficient specific and legitimate reason supported by substantial evidence to discredit Dr. Quaempts' opinion.  The ALJ is instructed to reconsider Dr. Quaempts' opinion on remand.  Specifically, the ALJ is instructed to consider Dr. Quaempts' opinion in light of his full treatment record with Plaintiff.

### 2. Other Assignments of Error

Plaintiff also challenges the ALJ's evaluation of the medical opinions of Dr. Drenguis and Dr. Burkett. ECF No. 15 at 10-17. Because this case is remanded, the Court declines to address Plaintiff's specific assignments of error. The ALJ is instructed to reconsider all of the medical opinion evidence on remand in light of the Court's instruction to develop the record, discussed *infra*.

Plaintiff also raises several challenges to the ALJ's step four finding that Plaintiff could perform past relevant work as a security guard. ECF No. 15 at 4-10. Because the ALJ is instructed to reconsider the medical opinion evidence and Plaintiff's symptom testimony on remand, the ALJ must also formulate a new RFC on remand and make new findings at steps four and five if appropriate. Accordingly, the Court declines to address Plaintiff's challenges to the ALJ's step four finding.

### C. Remand

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 15 at 9.

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, in a number of Social Security cases, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits" when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the record as a whole creates serious doubt that a claimant is disabled within the meaning of the Social Security Act. The record is replete with evidence

that Plaintiff did not take his insulin as prescribed. *See, e.g.*, Tr. 531, 548, 578, 584, 597. The record also indicates Plaintiff declined to participate in recommended physical therapy, despite Plaintiff's own testimony that physical therapy helped his shoulder pain. Tr. 55, 757. However, the record contains some evidence that Plaintiff's noncompliance was at times attributable to a lack of finances. *See, e.g.*, Tr. 55, 531-32. Further administrative proceedings are necessary to resolve this conflicting evidence. The ALJ is instructed on remand to consider Plaintiff's compliance with prescribed treatment and any reasons offered related to non-compliance with prescribed treatment. The ALJ is also instructed to reconsider the medical opinion evidence and Plaintiff's symptom testimony in light of this evidence, and to reconsider the other steps of the sequential evaluation analysis as necessary.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 15, is GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is DENIED.

3. The Court enter JUDGMENT in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further

ORDER - 27

proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and CLOSE THE FILE.

DATED November 21, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 28